IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| The Honorable WILLIAM M. O'NEILL, ) | |
| ) | Case No. 1:04-CV-1612 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Ann Aldrich |
| ) | |
| JONATHAN E. COUGHLAN, ) | Magistrate Judge Patricia A. Hemann |
| ) | |
| Defendant. ) | |
| ) | MEMORANDUM AND ORDER |
| ) | |
| ) | |

Before the court is the motion of defendant Jonathan Coughlan, Disciplinary Counsel for the Supreme Court of Ohio ("Coughlan") to vacate, dissolve, or modify the preliminary injunction entered by the court on September 14, 2004 [Docket No. 29] on the grounds that the court should have abstained from ruling on the constitutional merits of plaintiff William O'Neill's ("O'Neill") claims under *Younger v. Harris*, 401 U.S. 37 (1971). For the following reasons, the court denies Coughlan's motion.

## I. Background

O'Neill, an Ohio Court of Appeals Judge, was a candidate for a seat on the Ohio Supreme Court in the November 2004 election. O'Neill's campaign literature, advertising and website identified him as a judge on the Court of Appeals for the Eleventh District and identified him as a Democrat. Those materials also advanced the theme "Money and Judges Don't Mix" in connection with his call for judicial campaign finance reform and his policy of declining donations over $10. In July 2004, O'Neill received a letter from Coughlan's office, indicating that a grievance had been filed against O'Neill regarding his campaign activities and ordering O'Neill to respond as required by Ohio's rules governing

the judiciary and state bar. O'Neill instead filed a complaint in federal court in August 2004, seeking injunctive relief from the enforcement of three canons of the Ohio Code of Judicial Conduct ("the Code"), because those canons violated the federal constitutional free speech rights of state judicial candidates.[1]

In a brief filed on August 16, 2004 [Docket No. 7], and again at the show cause hearing held on that date, Coughlan initially argued that the court lacked jurisdiction because O'Neill's claims were unripe, and because Coughlan was not the proper party in interest. After hearing oral argument at that hearing, the court rejected Coughlan's arguments, and issued a temporary restraining order ("TRO") running through August 26, 2004. On O'Neill's motion, the court extended the TRO through September 14, 2004 [Docket No. 9].

On August 31, 2004 and September 8, 2004, Coughlan filed briefs in opposition to O'Neill's motion for a preliminary injunction and seeking dismissal of the case [Docket Nos. 11, 13]. In his August 31 brief, while declining to address O'Neill's as-applied challenges to the canons, Coughlan chose to specifically "address the facial challenges to each Canon that Plaintiff raises below in order to demonstrate that Plaintiff will not succeed on the merits of his action" (Def.'s Mem. in Opp'n [Docket No. 11], at 8-9). Coughlan then proceeded to argue in that brief that this case is distinguishable from *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), and that each of the three challenged

---

[1] Canon 7(B)(1) requires judges and judicial candidates to "maintain the dignity appropriate to judicial office." O'Neill challenges the enforcement of this canon with regard to his campaign materials' arguable insinuation that Ohio Supreme Court seats are "for sale" to campaign donors.

Canon 7(B)(3)(b) provides that "[a]fter the day of the primary election, a judicial candidate shall not identify himself or herself in advertising as a member of or affiliated with a political party."

Canon 7(D)(2) states that judicial campaign materials and ads may not "[u]se the term 'judge' when a judge is a candidate for another judicial office and does not indicate the court on which the judge currently serves."

canons is constitutional. (*Id.*, at 9-15). Well over one-third of Coughlan's August 31 brief was devoted to addressing the merits of O'Neill's constitutional claims, and Coughlan made the decision to address O'Neill's claims on their constitutional merits after expressly declining to address the merits of those claims either orally on in writing while opposing the TRO.

After considering Coughlan's additional briefs [Docket Nos. 11, 13] and O'Neill's additional briefs [Docket Nos. 10, 12], the court issued a preliminary injunction ("PI") [Docket No. 14] on September 14, 2004. In issuing the PI, the court accepted Coughlan's explicit invitation to determine the constitutional merits of O'Neill's claims after Coughlan had refused to address those merits in opposing the TRO, and found that O'Neill's claims had constitutional merit. The court determined that O'Neill was very likely to show that Canons 7(B)(3)(b) and 7(D)(2) violate the First Amendment, both facially and as applied to him. The court further determined that O'Neill was very likely to show that the enforcement of Canon 7(B)(1) was unconstitutional as applied to him.

On October 6, 2004, Coughlan filed a "supplement" to his earlier motion to dismiss [Docket No. 16], for the first time seeking dismissal of the case based on *Younger* abstention grounds. Coughlan raised *Younger* abstention for the first time after declining to address the merits of O'Neill's claims in opposing the TRO, then explicitly addressing the merits of those claims in his brief in opposing the PI.

## II. Discussion

The *Younger* abstention doctrine requires the court to abstain:

> from adjudicating a matter properly before it in deference to ongoing state . . . proceedings. Three considerations have emerged for determining when abstention is appropriate: (1) whether the underlying proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge.

-3-

*Tindall v. Wayne County Friend of Court*, 269 F.3d 533, 538 (6th Cir. 2001) (citing *Younger v. Harris*, 401 U.S. 37, 37-38 (1971) (formulating rule in criminal context) and *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (extending *Younger* abstention doctrine to civil and administrative proceedings)). While *Younger* abstention exists to preserve "comity" and "a proper respect for state functions," *Middlesex County Ethics Comm.*, 457 U.S. at 431, *Younger* abstention may be waived if "the State expressly urge[s] . . . the District Court to proceed to an adjudication of the constitutional merits." *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 626 (1986).

In arguing against abstention, O'Neill does not argue that proceedings under Ohio's rules governing the judiciary and the bar fail to implicate important state interests, nor does he argue that he would be deprived of an adequate opportunity to present his constitutional claims in the state proceedings. Indeed, in examining Ohio's disciplinary procedures, the Sixth Circuit has held that the proceedings do implicate important state interests and that those under investigation do possess an adequate opportunity to present their constitutional claims. *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993).

O'Neill does, however, present two arguments against *Younger* abstention. First, he argues that the underlying proceedings do not constitute an "ongoing state judicial proceeding." Second, he argues that even if the underlying proceedings satisfy the first prong of *Younger*, by failing to raise *Younger* until after the court's preliminary injunction ruling, Coughlan has waived any claim to abstention.

Regarding O'Neill's first argument, it is clear that under Ohio law, the filing of a grievance constitutes the beginning of a state judicial proceeding. *Hecht v. Levin*, 66 Ohio St.3d 458, 461-62, 613 N.E.2d 585, 588 (1993). In *Hecht*, the Ohio Supreme Court held "that filing a grievance complaint with a local bar association is a 'judicial proceeding' because such a filing initiates the purely judicial

-4-

disciplinary procedure created by this court" in order to hold that statements made in such a grievance "enjoy[] an absolute privilege against a civil action based thereon as long as the statement is relevant and material to the proceeding." *Id.* at 462, 613 N.E.2d at 588. As the first prong of *Younger* is dependent on state law characterization of proceedings, it is clear that the underlying proceedings in this case constitute "ongoing state judicial proceedings" under *Younger*. *Middlesex County Ethics Comm.*, 457 U.S. at 433. Put simply, because the Ohio Supreme Court has held that a grievance begins judicial proceedings for the purposes of immunizing statements made in such a grievance, the court could not find other than that the grievance also begins judicial proceedings for the purposes of *Younger*. Therefore, unless Coughlan has somehow waived *Younger* abstention, the doctrine would apply and the court must abstain.

O'Neill, however, argues next that because it is possible for the state to waive its *Younger* abstention claim by "expressly urging" an "adjudication of the constitutional merits," Coughlan's choice to address the constitutional merits in opposing the preliminary injunction after declining to address the merits in opposing the temporary restraining order, combined with Coughlan's failure to raise *Younger* until after the court's preliminary injunction, constitutes waiver. Coughlan should have raised *Younger* abstention from the very beginning, and certainly prior to any ruling on the merits by this court on O'Neill's First Amendment claims. Instead, Coughlan declined to address the merits of O'Neill's claims in opposing the temporary restraining order, and then *chose* to address the constitutional merits of O'Neill's claims in his brief opposing the preliminary injunction while failing to raise *Younger* abstention during that entire time.

By failing to raise *Younger* abstention prior to either of the court's injunctive orders, and by explicitly *choosing* to address the constitutional merits of O'Neill's First Amendment claims in opposing

-5-

the preliminary injunction after *declining* to do so in opposing the temporary restraining order, "the State expressly urge[d] . . . the District Court to proceed to an adjudication of the constitutional merits." *Dayton Christian Sch.*, 477 U.S. at 626. For the court to abstain at this point would be to ignore the clear mandate of the Supreme Court in *Dayton Christian Schools*. More importantly, if the court were to abstain at this point, the court would have to ignore not just Coughlan's decision to argue the constitutional merits of O'Neill's claims, but also his *choice* to do so after expressly declining to address those merits in opposing the temporary restraining order. Abstaining at this point would not serve the interests of comity that *Younger* abstention protects, and would instead penalize O'Neill for *Coughlan's* decision to argue the constitutional merits of O'Neill's claims before this court in opposing the preliminary injunction. Therefore, the court holds that *Younger* abstention was waived by the combination of both (1) Coughlan's decision to argue the merits of O'Neill's claims in opposing the preliminary injunction after declining to do so in opposing the temporary restraining order and (2) his failure to raise *Younger*, prior to a ruling by this court on the merits of O'Neill's claims in the form of the preliminary injunction at issue.

### III. Conclusion

For the foregoing reasons, the court denies Coughlan's motion to vacate the preliminary injunction [Docket No. 29].

This order is not final, but it is appealable. 28 U.S.C. § 1292(a)(1).

IT IS SO ORDERED.

      /s/ Ann Aldrich
   ANN ALDRICH
   UNITED STATES DISTRICT JUDGE

**Dated: June 16, 2006**