UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| The HONORABLE WILLIAM M. O'NEILL, | ) | |
| | ) | Case No. 1:04-CV-1612 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| JONATHAN E. COUGHLAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Before the court are cross-motions for summary judgment by plaintiff William O'Neill ("O'Neill") [Docket No. 47] and defendant Jonathan Coughlan, Disciplinary Counsel for the Supreme Court of Ohio ("Coughlan") [Docket No. 52]. For the following reasons, the court grants O'Neill's motion, denies Coughlan's motion, converts the preliminary injunction to a permanent injunction, and enters final judgment in favor of O'Neill.

**I.     Background**

O'Neill, an Ohio Court of Appeals Judge, was a candidate for a seat on the Ohio Supreme Court in the November 2004 election. O'Neill's campaign literature, advertising, and website identified him as a judge on the Court of Appeals for the Eleventh District and identified him as a Democrat. Those materials also advanced the theme "Money and Judges Don't Mix" in connection with his call for judicial campaign finance reform and his policy of declining donations of over $10. In July 2004, O'Neill received a letter from Coughlan's office, indicating that a grievance had been filed against O'Neill regarding his campaign activities and ordering O'Neill to respond as required by Ohio's rules governing the judiciary and state bar. O'Neill instead filed a complaint in federal court in August 2004,

seeking injunctive relief from the enforcement of three canons of the Ohio Code of Judicial Conduct ("the Code"), because those canons violated the federal constitutional free speech rights of state judicial candidates.[1]

In a brief filed on August 16, 2004 [Docket No. 7], and again at the show cause hearing held on that date, Coughlan initially argued that the court lacked jurisdiction because O'Neill's claims were unripe, and because Coughlan was not the proper party in interest. After hearing oral argument at that hearing, the court rejected Coughlan's arguments, and issued a temporary restraining order ("TRO") running through August 26, 2004. On O'Neill's motion, the court extended the TRO through September 14, 2004 [Docket No. 9].

On August 31, 2004 and September 8, 2004, Coughlan filed briefs in opposition to O'Neill's motion for a preliminary injunction and seeking dismissal of the case [Docket Nos. 11, 13]. In his August 31 brief, while declining to address O'Neill's as-applied challenges to the canons, Coughlan chose to specifically "address the facial challenges to each Canon that Plaintiff raises below in order to demonstrate that Plaintiff will not succeed on the merits of his action" (Def.'s Mem. in Opp'n [Docket No. 11], at 8-9). Coughlan then proceeded to argue in that brief that this case is distinguishable from

---

[1]Canon 7(B)(1) requires judges and judicial candidates to "maintain the dignity appropriate to judicial office." O'Neill challenges the enforcement of this canon with regard to his campaign materials' arguable insinuation that Ohio Supreme Court seats are "for sale" to campaign donors.

Canon 7(B)(3)(b) provides that "[a]fter the day of the primary election, a judicial candidate shall not identify himself or herself in advertising as a member of or affiliated with a political party."

Canon 7(D)(2) states that judicial campaign materials and ads may not "[u]se the term 'judge' when a judge is a candidate for another judicial office and does not indicate the court on which the judge currently serves."

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), and that each of the three challenged canons is constitutional. (*Id.*, at 9-15).

After considering Coughlan's additional briefs [Docket Nos. 11, 13] and O'Neill's additional briefs [Docket Nos. 10, 12], the court issued a preliminary injunction ("PI") [Docket No. 14] on September 14, 2004, relying principally on *Ashcroft v. ACLU*, 535 U.S. 564 (2002), and *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002). In issuing the PI, the court accepted Coughlan's explicit invitation to determine the constitutional merits of O'Neill's claims after Coughlan had refused to address those merits in opposing the TRO, and found that O'Neill's claims had constitutional merit. The court determined that O'Neill was very likely to show that Canons 7(B)(3)(b) and 7(D)(2) violate the First Amendment, both facially and as applied to him. The court further determined that O'Neill was very likely to show that the enforcement of Canon 7(B)(1) was unconstitutional as applied to him.

On October 6, 2004, Coughlan filed a "supplement" to his earlier motion to dismiss [Docket No. 16], for the first time seeking dismissal of the case based on *Younger* abstention grounds. *Younger v. Harris*, 401 U.S. 37 (1971). Coughlan raised *Younger* abstention for the first time after declining to address the merits of O'Neill's claims in opposing the TRO, then explicitly addressing the merits of those claims in his brief in opposing the PI. In March 2006, Coughlan filed a motion to dissolve the PI [Docket No. 29] on *Younger* abstention grounds. The court denied that motion in June 2006 [Docket No. 37], finding that although *Younger* abstention would require dismissal of this matter for lack of subject matter jurisdiction, Coughlan's choice to argue the merits of the case in opposing the PI constituted waiver of *Younger* abstention. The parties then filed the instant cross-motions for summary judgment.

**II.     Discussion**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The facts are basically undisputed in this matter, though the parties of course disagree over the application of the law to the facts. In its PI order [Docket No. 14], the court found it very likely that Canons 7(B)(3)(b) and 7(D)(2) were unconstitutional on their face, because they violate the First Amendment by restricting speech on the basis of content, and that Canon 7(B)(1) was unconstitutional as applied to O'Neill for the same reason. The court then found that the balance of harms and the public interest strongly favored granting an injunction, and enjoined Coughlan from enforcing the canons as detailed in that order. The court hereby declares that Canons 7(B)(3)(b) and 7(D)(2) are facially unconstitutional and that Canon 7(B)(1) is unconstitutional as applied to O'Neill, for the reasons more fully explained in the PI order. Coughlan has made no new arguments and has not pointed to any new case law that would cause the court to reconsider its earlier conclusions.

In determining whether to issue a permanent injunction, the court must consider (1) whether the movant is actually successful on the merits, (2) whether the movant would suffer continuing irreparable injury for which there is no adequate remedy at law if the court fails to issue the injunction, (3) whether the injunction would cause substantial harm to others, and (4) whether the public interest would be served by issuance of the injunction. *United States v. Szoka*, 260 F.3d 516, 523 (6th Cir. 2001) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir.1998); *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir.1997)).

Because of O'Neill's success on the constitutional merits of his claim, the court also finds that failure to issue the permanent injunction would cause continuing irreparable harm. The denial of constitutional rights has been held by numerous federal courts, including the Supreme Court, to

constitute irreparable harm. Specifically, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). It follows, as a matter of law, that O'Neill will suffer continuing irreparable harm if Coughlan is not enjoined from enforcing the challenged canons, and that O'Neill possesses no adequate remedy at law for this irreparable harm. The court also finds that Coughlan will not suffer any appreciable amount of harm if he is enjoined from enforcing the canons at issue. Therefore, the third factor considered regarding the issuance of a permanent injunction favors O'Neill. It is also in the public interest to prevent the enforcement of unconstitutional laws and to vindicate constitutional rights. The court therefore finds that the public interest would be served by a permanent injunction.

Coughlan again raises *Younger* abstention and asks this court to dismiss O'Neill's complaint for lack of subject matter jurisdiction, but makes no new arguments and cites no new or controlling authority that causes the court to reconsider its June 2006 order denying dissolution of the PI because Coughlan has waived *Younger* abstention. The court therefore finds that *Younger* abstention does not apply, for the reasons more fully explained in that order. Finally, Coughlan argues that basic concerns of comity between state and federal courts require this court to decline jurisdiction, apart from *Younger*. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). Under *Grand Trunk*, the court must consider five factors in deciding whether to decline jurisdiction:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

-6-

> (5) whether there is an alternative remedy which is better or more effective.

*Id.* In this case, a declaratory judgment would settle the controversy, would serve a useful purpose in clarifying the constitutional rights in issue, would not be used for procedural fencing or in a race for res judicata, and is superior to any alternative remedy. Coughlan argues that a declaratory judgment by this court would increase friction between federal and state courts and improperly encroach upon state jurisdiction. However, this court's duty is to protect the constitutional rights of individuals who are properly before it. And as Coughlan has waived *Younger* abstention, sought the ruling of this court on the merits of O'Neill's claims and lost, it seems odd for Coughlan now to argue that a state forum would be a superior forum. In analyzing the five *Grand Truck* factors, the court finds that comity does not require dismissal of O'Neill's complaint.

Because the court has declared the canons at issue unconstitutional and found that a permanent injunction should issue in this case, and because the court finds that neither *Younger* abstention nor comity requires the court to decline to enter such a declaration and injunction, the court grants O'Neill's motion for summary judgment and denies Coughlan's motion for summary judgment.

### III.    Conclusion

For the foregoing reasons, the court grants O'Neill's motion for summary judgment [Docket No. 47] and denies Coughlan's motion [Docket No. 52], and:

> (1) converts the preliminary injunction into a permanent injunction;
>
> (2) declares that Canons 7(B)(3)(b) and 7(D)(2) are facially unconstitutional and that Canon 7(B)(1) is unconstitutional as applied to the plaintiff;
>
> (3) permanently enjoins the defendant and his officers, agents, servants, employees, and attorneys, and anyone in concert or participation with them who receives actual notice of this order (by personal service or

otherwise) from enforcing, threatening to enforce, or recommending enforcement of Canons 7(B)(3)(b) and 7(D)(2) of the Ohio Code of Judicial Conduct against any judicial candidate, and from investigating, threatening to investigate, or recommending investigation of possible violations thereof;

(4) permanently enjoins the defendant and any of his officers, agents, servants, employees, and attorneys, and anyone in concert or participation with them who receive actual notice of this order (by personal service or otherwise) from enforcing, threatening to enforce, or recommending enforcement of Canon 7(B)(1) of the Ohio Code of Judicial Conduct against any judicial candidate based on nonobscene, nondefamatory speech, and from investigating, threatening to investigate, or recommending investigation of possible violations thereof based on nonobscene, nondefamatory speech;

(5) orders that this injunction shall not be construed to enjoin any person from enforcing, threatening to enforce, or recommending enforcement of Canon 7(B)(1) of the Ohio Code of Judicial Conduct, based on defamatory speech, obscene speech, or nonexpressive conduct, i.e. conduct that is not speech, or from investigating, threatening to investigate, or recommending investigation of possible violations thereof;

(6) orders that the plaintiff need not post bond to secure this permanent injunction; and

(7) enters final judgment in favor of the plaintiff.

This order is final and appealable.

IT IS SO ORDERED.

                                                  /s/ Ann Aldrich
                                                  ANN ALDRICH
                                                  UNITED STATES DISTRICT JUDGE

**Dated: January 26, 2007**